# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DARRELL ALAN BROADWATER, JR. | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-16-2223 |
| WARDEN OF MRDCC, *et al.* | * | |
| Defendants | * | |

\*\*\*

## MEMORANDUM

In response to the above-entitled civil rights action, defendants filed a motion to dismiss or for summary judgment. ECF 15. Plaintiff opposes the motion. ECF 18 and 22. The court finds a hearing unnecessary for the disposition of the motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, defendants' motion, construed as a motion for summary judgment, shall be granted.

Also pending are defendants' motions for extension of time (ECF 14 and 20), which shall be granted. Plaintiff's motion for default judgment (ECF 17) shall be denied as defendants did not default in responding to the complaint.

## I. Background

### A. Complaint Allegations

Plaintiff Darrell Alan Broadwater is an inmate committed to the custody of the Maryland Department of Public Safety and Correctional Services (DPSCS). Broadwater states that on October 22, 2015, he was incarcerated at the Maryland Reception Diagnostics and Classification Center (MRDCC) and confined to a cell in segregation housing designated as "3-CM." ECF 1 at p. 5. On the morning of October 23, 2015, Broadwater awoke to discover his body was covered in "bites" which were not on his body the day before. *Id.* Broadwater knocked on his cell door

to get the correctional officer's attention and made her aware of the bites he had sustained. He states the officer "wrote this in her log book," contacted the medical unit, and called for an escort to take Broadwater to the medical unit. *Id.*

Broadwater states that he was forced to wait for 12 hours in his cell, which he maintains was infested with bed bugs, waiting for an escort to the medical unit. ECF 1 at p. 6. He states that he continually asked Sgt. Brown what was going on with his escort and she told him she had called for an escort and that she admitted to seeing bugs crawling on the wall. *Id.*

Broadwater was taken to the medical unit at approximately 8:50 p.m., where pictures were taken of his "entire body," he was given new clothes, and "cream to wash in." *Id.* He states he was examined by a Physician's Assistant who diagnosed him as suffering from a rash and bed bug bites. Following his examination, Broadwater was taken back to the same cell where he suffered the bed bug bites and he was forced to stay in the cell another night. Broadwater states he continued to suffer bed bug bites throughout the night of October 23, 2015. On October 24, 2015, Broadwater filed an administrative remedy procedure complaint (ARP). Approximately one-hour after turning in the ARP, Broadwater states that "the Major, Asst. Warden and some other people came to 3-CM." *Id.* After being in the cell with bed bugs for 30 hours and suffering bites, Broadwater was moved to another cell. *Id.* He states that within one hour he felt relief from getting bitten. *Id.*

B. Defendants' Response

Defendants do not dispute Broadwater's assertion that he suffered bug bites during the night of October 22, 2015, and that he informed correctional officers about the bites on the following morning at approximately 10:00 a.m. ECF 15 at Ex. 1, pp. 11 – 12. Officers noted in

2

the log book that Broadwater could be seen at medical and that his "mattress needs to be bagged and exchanged today." *Id.*

Throughout the day on October 23, 2015, officers repeatedly checked on the status of Broadwater's escort. At 11:50 a.m., an officer called "via radio" and spoke with Sgt. Christian regarding an escort for Broadwater. ECF 15 at Ex. 11, p. 12. At 2:30 p.m., it was noted that Broadwater was still waiting for an escort officer, but that none were available. *Id.* at p. 13. Additionally it was noted that "Nurse Thomas called to advise that the the Medcart [was] delayed due to keys being locked in [the] cart." *Id.* At 3:00 p.m., Corporal Wilson told Lt. Nuffin that Broadwater and his cellmate were complaining of bed bug bites and that they were supposed to go to the medical unit, but the nurse had locked the keys in the medical cart and no escort was available. *Id.* At 7:50 p.m. an inmate worker came to the housing unit to clean, sanitize, and place new mattresses in Broadwater's cell due to the bed bugs. *Id.* at p. 14.

Broadwater was seen on October 23, 2015, at 9:14 p.m., by medical staff in response to a sick call slip he had submitted regarding a painful lump on his lip. ECF 15 at Ex. 3, p. 2. A log entry for Broadwater's housing unit notes that he would need another shower during the 11 – 7 shift to wash off medication provided for the bed bug bites. *Id.* at Ex. 1, p. 15. Defendants claim that Broadwater refused the shower. *Id.* at p. 16.

Defendants provide a copy of the ARP filed by Broadwater that differs from the allegations raised in the instant complaint. In the ARP Broadwater states that he and his cellmate were given permethrin cream 5% to apply topically and that the bites went away after the first use of the cream. Broadwater also states in the ARP that the cell was cleaned with bleach and new mats were provided; he did not claim that he was put into the same cell where he continued to be bitten. ECF 15 at Ex. 1, pp. 26 – 27.

C.  Administrative Remedies

Broadwater claims in his complaint that the Warden did not respond to his ARP and that he filed an appeal to the Commissioner of Correction for a lack of response in "the middle of Nov[ember] 2015." ECF 1 at p. 4. His appeal was returned to him by the Commissioner because it was not known what Broadwater was trying to do. *Id.* Broadwater filed another appeal and he received a copy of the Warden's response dismissing his ARP. *Id.* Broadwater states that in mid-December 2015, he filed an appeal to the Inmate Grievance Office (IGO) regarding the lack of response to the appeal to the Commissioner filed in November 2015. *Id.* He states he had not received a response from the IGO as of June 7, 2016. *Id.*

Defendants state that Broadwater filed ARP-MRDCC-1627-15 with the Warden on October 29, 2015. ECF 15 at Ex. 1, pp. 26 – 27. The Warden dismissed the ARP on December 3, 2015. *Id.* at Ex. 2, p. 14. On December 4, 2015, Broadwater filed an appeal to the Commissioner of Correction for lack of a response by the Warden to ARP 1627-15. *Id.* at pp. 15- 17. The appeal was returned to Broadwater because he had not waited for the Warden's response to his ARP. *Id.* at Ex. 4. Broadwater signed a receipt for the Warden's response to his ARP on January 8, 2016.

Broadwater did not appeal the Warden's response to ARP 1627-15 to the Commissioner of Correction; rather, defendants state that he waited until May 11, 2016, to file a complaint with the IGO (No. 20160761) as an appeal of the Warden's denial of ARP 1627-15. Included with his submission to the IGO was his initial ARP; the Warden's December 3, 2015 dismissal; the December 4, 2015 submission to the Commissioner of Correction; the Commissioner's response; and an unsubmitted ARP dated December 8, 2015. ECF 15 at Ex. 2, pp. 12 – 19.

4

On June 27, 2016, the Executive Director of the IGO sent an order to Broadwater indicating that his IGO complaint was being referred to the Office of Administrative Hearings (OAH) for a hearing. *Id.* at Ex. 2, pp. 21 – 24. A hearing was held on August 18, 2016, and a decision denying relief and dismissing the grievance as being without merit was issued on September 7, 2016. *Id.* at pp. 3 – 9; 37 – 43.

## II. Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**III. Analysis**

A. Exhaustion of Administrative Remedies

Defendants raise the affirmative defense of non-exhaustion and assert Broadwater did not properly presented his claim through the administrative remedy procedure before filing the instant complaint and it therefore must be dismissed pursuant to 42 U.S.C. §1997e.[1] ECF 15-1 at pp. 18 – 22. Inmates are required to exhaust "such administrative remedies as are available" before filing an action. 42 U.S.C. § 1997e(a), *see also Ross v. Blake*, _U.S._, 136 S.Ct. 1850, 1858 (2016) (An inmate "must exhaust available remedies, but need not exhaust unavailable ones."). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Exhaustion is mandatory. *Ross*, 136 S.Ct. at 1857, *Jones v. Bock*, 549 U.S. 199, 219 (2007). A court may not excuse a failure to exhaust. *Ross*, 136 S. Ct. at 1856, citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion"). The purpose of exhaustion is to: 1) allow a prison

---

[1] The statute provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

6

to address complaints about the program it administers before being subjected to suit; 2) reduce litigation to the extent complaints are satisfactorily resolved; and 3) prepare a useful record in the event of litigation. *Jones,* 549 U.S. at 219. An inmate's failure to exhaust administrative remedies is an affirmative defense; defendant bears the burden of proving that he had remedies available to him of which he failed to take advantage. *Jones,* 549 U.S. at 211–12, 216; *Moore,* 517 F.3d at 725.

In *Ross v. Blake,* 136 S. Ct. 1850 (2016), the Supreme Court of the United States identified three kinds of circumstances in which an administrative remedy is unavailable. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

In Maryland, filing a request for administrative remedy ("ARP") with the warden of the prison is the first of three steps in the ARP process. *See* Code of Md Regs. ("COMAR"), tit. 12 §07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR, tit. 12 §07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. COMAR, tit. 12 §07.01.05C. If the appeal is denied, the prisoner has 30 days to file

a grievance with the Inmate Grievance Office. *See* Md. Corr. Servs., Code Ann. §§10-206, 10-210; COMAR, tit. 12 §§ 07.01.03 and 07.01.05B.

Complaints are reviewed preliminarily by the Inmate Grievance Office ("IGO)"). *See* Md. Corr. Servs., Code Ann.. §10-207; COMAR, tit. 12 §07.01.06A. If a complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. Md. Corr. Servs., Code Ann. §10-207(b)(1); *see* COMAR, tit. 12 §07.01.07B. The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. Md. Corr. Servs., Code Ann.. §10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* Md. Cts. & Jud. Proc., Code Ann.. §10-208(c); COMAR tit. 12 §07.01.07-.08. The conduct of such hearings is governed by statute. *See* Md. Corr. Servs., Code Ann.. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* Md. Corr. Servs., Code Ann. §10-209(b)-(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* Md. Corr. Servs., Code Ann. §10-210. An inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

Broadwater filed an ARP on October 29, 2015, which reads, in pertinent part, as follows:

> On Oct 23rd 2015 I woke up with my skin burning and itching, I notice bites all over my arms and back. My cell buddy Louis Obermaier . . . also had bites on his neck and chest, we were both moved to this cell 3-CM-63 on the 22nd of Oct 2015 and neither one of us had been bit prior. . . . At approx[imately] 9 p.m. on the 23rd of Oct we were both taken to medical given special soap too wash with and permethrin cream 5% . . . too put on our entire body. Medical then diagnosed us both with bed bug bites and me with also a rash. . . . After using that cream 1 time bites went away also cell was cleaned with bleach, new mats given. This is a situation that should have never took place at all. . . . This is a direct violation of health and hygiene rules, rules of the A.B.A. and my amendment rights. For compensation and relief I want fifty thousand dollars and I want to remain housed at MRDCC and given a working assignment detail. If no compensation is given I will continue with this process and will contact NCIA, Board of Health and Mental Hygiene and file class action lawsuit. Bed bugs carry diseases and other things. This is a serious matter. If working detail is given I will sign off on this complaint.

ECF 15 at Ex. 1, pp. 26 – 27 (ARP MRDCC 1627-15).

The ARP was denied by the Warden on December 3, 2015. *Id.* at p. 25. The Warden's response states in relevant part as follows:

> By your own admission in this ARP, it revealed that you were taken to medical, treated with a special soap and given a cream for the bed bugs, the cell was cleaned, and you were given a new mattress. You will not be compensated with any type of money because MRDCC did take corrective action once this situation was brought to their attention. As far as housing and job status, that is considered to be a case management decision and recommendation as described in OPS.185.003 which you cannot file an ARP for. Therefore, no further action is needed.

ECF 15 at Ex. 1, p. 25. The merits of Broadwater's claims were addressed after a hearing before an Administrative Law Judge (ALJ) from the Office of Administrative Hearings (OAH) for the IGO. *Id.* at Ex. 2, pp. 3 – 7. The ALJ made the following findings of fact:

> 1. On October 22, 2015, and at all times relevant to this proceeding, the Grievant was housed at MRDCC, a DOC facility.
>
> 2. On October 22, 2015, the Grievant was moved from a segregation unit to a medical unit (Unit 3CM).

9

> 3. On October 23, 2015, the Grievant woke up at 8:30am with burning, itchy skin and marks all over his body.
>
> 4. On October 23, 2015, in the morning, the Grievant requested medical attention for his discomfort.
>
> 5. The DOC staff inspected the Grievant's room and found three bed bugs, They discarded the linens and gave him a new mattress.
>
> 6. On October 23, 2015, the Grievant was escorted to the medical office at 9:00 p.m.
>
> 7. The Grievant had an allergic reaction to bed bug bites on his arms, back, chest, neck and legs.
>
> 8. The medical office gave the Grievant a special shower cream, a steroid cream and Benadryl.
>
> 9. The Grievant saw a difference in his condition after one day of treatment.

ECF 15 at Ex. 2, p. 5. The ALJ noted that Broadwater took the position that "MRDCC had a problem with bed bugs and that the problem should have been handled prior to him being placed in the infested cell." *Id.* at p. 6. He found the testimony of the institutional representative, Ryan Knorr, that MRDCC staff removed Broadwater from the infested cell as soon as it was known there were bed bugs in his cell and cleaned the cell immediately very credible and noted that Broadwater did not refute it. *Id.* The ALJ further stated that "[t]here is no evidence that MRDCC (sic) knew or should have known of the problem prior to placing [Broadwater] in the cell." *Id.* The IGO complaint was found to be without merit and was dismissed on September 7, 2016. *Id.* at p. 7.

Defendants assert that Broadwater failed to properly exhaust administrative remedies before filing the instant complaint. With regard to the claim that Broadwater was improperly exposed to bed bugs, the complaint was filed prior to the issuance of the IGO decision dismissing Broadwater's claims as without merit. The PLRA exhaustion requirement is not

10

satisfied under such circumstances and Broadwater's claim may be dismissed without prejudice on that basis alone. With regard to the claim that Broadwater was forced to sleep in a cell that was infested with bed bugs for five days following the discovery, such a claim was not pursued through any portion of the administrative remedy process and is also subject to dismissal without prejudice. Even if this court were to view Broadwater's claims as properly exhausted, however, the complaint fails to state a constitutional claim.

B. Eighth Amendment Claim

1. Conditions Claim

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 298-99. In other words, "the test is whether the guards know the plaintiff inmate faces a serious

11

danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established pre-existing law. *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of "a serious or significant physical or emotional injury resulting from the challenged conditions." *See Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 770).

Broadwater's claim fails because there is no evidence that either of the named defendants had subjective knowledge that a known, excessive risk of harm to his health was disregarded. Indeed, prior to the filing of the instant complaint, Broadwater admitted that correctional staff took measures to correct the issue with bed bugs in his cell. Had he named the correctional staff who were directly involved in assigning him to the cell in question and subsequently remediating the problem after becoming aware of it, Broadwater would have no claim, constitutional or otherwise, against those staff members. The Eighth Amendment does not guarantee that prisoners will suffer no harm as a result of incarceration; rather, it prohibits harm that is

deliberately or recklessly inflicted by those who are in a position to protect against the harm suffered. Here, as noted by the ALJ, there is no evidence that anyone knew there were bed bugs in the cell before Broadwater was placed in the cell.

The undisputed corrective action taken, replacement of the sheets, occurred almost immediately. Broadwater's allegation that he was forced to sleep in an infested cell for five days after informing correctional officers he had been bitten is contradicted by his assertions in his ARP and in his testimony at the IGO hearing. He explains this discrepancy by stating that he was misled by correctional officers to believe his cell had been cleaned and it was not until he reviewed the logbook entries, submitted as exhibits in this case, that he realized that the cell had not been cleaned. ECF 18 and 22. Significantly, Broadwater does not state that his awareness of the cell not being cleaned was related in any way to a continuation of harm, *i.e.*, bed bug bites. Conditions which do not result in a significant physical or emotional injury do not violate the Eighth Amendment.

2. Medical claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with

deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)).

There is no evidence that the named defendants had anything to do with the 12 hour delay in medical care for Broadwater. There is also no evidence that any correctional or medical staff knew of a serious medical need requiring urgent care that was then refused to Broadwater. While there is some evidence that Broadwater's request for medical care did not even concern the bites from bed bugs he suffered, even if his request concerned the bed bug bites, the delay that occurred in this case was not evidence of deliberate indifference to a serious medical need. The delay did not make Broadwater's condition more serious or change the prognosis. The 12-hour delay in treating Broadwater's non-serious condition is not sufficient to state an Eighth Amendment claim against the named defendants or any other potential defendants.

## IV. Conclusion

Defendants are entitled to summary judgment in their favor on the claims asserted. To the extent Broadwater raises a pendent state claim under the Maryland Tort Claims Act, this court declines to exercise supplemental jurisdiction over that claim and it is dismissed without prejudice. "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

A separate order follows.

_____  
Date

_____  
J. Frederick Motz  
United States District Judge

2017 APR 13 PM 12:04
CLERK'S OFFICE
AT BALTIMORE
U.S. DISTRICT OF MARYLAND
FILED
DEPUTY
BY

15